IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| MICROFINE, INC., | ) | |
| | ) | |
|       Plaintiff, | ) | |
| | ) | |
|     v. | ) | 1:12-CV-367 |
| | ) | |
| PUPGEAR CORPORATION, et al., | ) | |
| | ) | |
|       Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

This is a breach of contract claim before the Court on a Motion for Partial Summary Judgment filed by the plaintiff Microfine, Inc. against the defendant PupGear Corporation. The undisputed facts show that the parties had a contract and that PupGear has failed to pay for goods it ordered from Microfine. Microfine is entitled to summary judgment on its contract claim.

## PROCEDURAL BACKGROUND AND JURISDICTION

Microfine filed this action in state court, seeking damages from PupGear, Theresa Marler, and Michele Malm (collectively "Defendants") for breach of contract and related commercial torts. Defendants removed the case to this court based on diversity jurisdiction. (Doc. 1.) Before the Court are Microfine's Motion for Partial Summary Judgment, (Doc. 13), on its breach of contract claim against PupGear and its Motion to Amend the Complaint to Voluntarily Dismiss Tort Claims and Individual Defendants, (Doc. 27).

## FACTS

Viewed in the light most favorable to PupGear, the evidence shows the following:

Microfine and PupGear each manufacture and sell pet-related products to retailers and consumers. (Doc. 13-1 at ¶¶ 3-4.) Ms. Marler and Ms. Malm founded and hold shares in

PupGear, which is a closely held corporation. (Doc. 23-1 at ¶¶ 1, 4; Doc. 2.) Ms. Marler serves as a director of PupGear and Ms. Malm is its chief executive officer. (Doc. 23-1 at ¶¶ 1, 4.)

Before 2011, PupGear purchased absorbent pads from Microfine for use as a component part in Microfine's primary product—dog toilets. (Doc. 13-1 at ¶ 5.) Around May 2011, Ms. Marler approached Microfine president John Martin about the possibility of an ongoing partnership between the two corporations whereby PupGear would pay Microfine to acquire, manufacture, and ship certain goods. (*Id.* at ¶ 6; Doc. 23-1 at ¶ 8.) Mr. Martin expressed interest, (Doc. 23-1 at ¶ 8), and Ms. Marler "charged [PupGear president Peter] Palmer with exploring the possibility of such an agreement with Microfine." (*Id.* at ¶¶ 5, 9.)

Mr. Palmer had joined PupGear in September 2010, (Doc. 13-2 at ¶ 2; Doc. 23-1 at ¶ 5), and Ms. Marler made him president to "facilitate his dealings with third parties." (Doc. 23-1 at ¶¶ 5-6.) For example, Mr. Palmer purchased absorbent pads from Microfine for PupGear. (*Id.* at ¶ 30.) According to Ms. Marler, Mr. Palmer's "authority was limited to the areas of improving sales and marketing efforts, and by the requirement that he keep [Ms. Malm and Ms. Marler] apprised of his actions and his progress." (*Id.* at ¶ 7.) Ms. Marler says she "did not give [Mr.] Palmer authority to enter into any agreement with Microfine without the express consent of [Ms.] Marler and [Ms.] Malm." (*Id.* at ¶ 9.) That said, Mr. Palmer, Ms. Marler, and Ms. Malm all represented to Mr. Martin that Mr. Palmer was president of PupGear. (Doc. 13-1 at ¶ 76.) There is no evidence that Ms. Marler, Ms. Malm, or any other agent of PupGear ever informed Microfine that Mr. Palmer's authority as president was limited.

In August, with negotiations for a final agreement ongoing, Mr. Palmer, Ms. Marler, and Ms. Malm signed two letters on behalf of PupGear: a Letter of Intent for Manufacturing Agreement, (*id.* at 29-33), and a Pre Final Agreement Transactions Understanding, (*id.* at 34).

The Letter of Intent summarized "the parties' present, non-binding intention to enter into a binding, comprehensive, written agreement in the near future." (*Id.* at 29.) The Pre Final Agreement Transactions Understanding noted that it was "understood by both PupGear and Microfine that it may take several weeks to execute" a final agreement, and that should the parties fail to reach a final agreement, "all pre-agreement items financed by Microfine will be invoiced to PupGear . . . with 30 day terms, at Cost of Goods plus 22%." (*Id.* at 34.)

Over the following weeks, Mr. Palmer emailed eight purchase orders to Microfine. (*Id.* at ¶¶ 24-69; Doc. 13-2 at ¶¶ 6-14.)[1] Microfine accepted these purchase orders and took steps to contract with third parties for the goods involved. (Doc. 13-1 at ¶¶ 24-69.) Then, on October 4, 2011, PupGear informed Microfine by letter that it was terminating negotiations of a final manufacturing agreement. (*Id.* at ¶ 72.)

To date, PupGear has not paid Microfine for the purchase orders in question. (*Id.* at ¶ 74.) PupGear received the disposable pads, synthetic grass, and plastic trays it ordered. (*Id.* at ¶ 79.) The display racks, PupZymes, mini trays, and boxes PupGear ordered are custom goods made to its specifications and in some cases bear PupGear's logos and marks. (*Id.* at ¶ 80.) The PupFresh ordered by PupGear is a generic product—a naturally occurring mineral—but Microfine is unaware of another interested buyer, perhaps because the cost of shipping PupFresh "far exceeds its price." (*Id.* at ¶ 81.)

---

[1] Specifically, PupGear ordered: (1) disposable pads (Order #60456, August 4, 2011), (Doc. 13-2 at 16-17); (2) plastic trays (Order #60471, August 10, 2011, augmented by Order #60482, September 1, 2011), (*id.* at 20-25); (3) display racks (Order #60475, August 11, 2011), (*id.* at 26-27); (4) synthetic grass (Order #60480, August 16, 2011), (*id.* at 18-19); (5) boxes (Order #60481, August 26, 2011), (*id.* at 36-38); (6) "PupFresh" (Order #60469, September 2, 2011), (*id.* at 32-35); (7) "PupZymes" (Order #60483, September 6, 2011), (*id.* at 28-29); and (8) mini trays (no order number, September 9, 2011), (*id.* at 30-31). Although Mr. Palmer sent nine emails with nine separate purchase order numbers, the parties treat the two requests for plastic trays as one purchase order.

**ANALYSIS**

Under North Carolina law, a successful claim for breach of contract requires the existence of a valid contract and the defendant's breach of the terms of that contract. *Becker v. Graber Builders, Inc.*, 149 N.C. App. 787, 792, 561 S.E.2d 905, 909 (2002). Microfine has moved for summary judgment on the issues of: (1) the existence of the parties' eight purchase order contracts; (2) PupGear's breach of those contracts; and (3) damages in the amount of $102,425.74. In response, PupGear contends that the eight purchase orders were not valid contracts because Mr. Palmer lacked the authority to enter into contracts on behalf of PupGear.

I.   **Mr. Palmer's Authority**

A corporation is liable upon a contract made by its agent if the agent was acting within the scope of his or her actual or apparent authority. *See Manecke v. Kurtz*, ___ N.C. App. ___, ___, 731 S.E.2d 217, 220 (2012). Apparent authority "is that authority which the principal has held the agent out as possessing or which he has permitted the agent to represent that he possesses." *Branch v. High Rock Realty, Inc.*, 151 N.C. App. 244, 250, 565 S.E.2d 248, 252 (2002) (citations and quotation marks omitted). "Pursuant to the doctrine of apparent authority, the principal's liability is to be determined by what authority a person in the exercise of reasonable care was justified in believing the principal conferred upon his agent." *Id.* at 250, 565 S.E.2d at 253 (citations omitted).

Microfine relied upon the apparent authority of the president of PupGear to enter into purchase order agreements. (Doc. 13-1 at ¶ 78.) Nothing in the facts and circumstances here would put an ordinarily prudent person on notice that Mr. Palmer was exceeding the scope of his authority as president when he placed the eight purchase orders in question. North Carolina law

> is clear as to the apparent authority of the president of a closely-held corporation to enter into contracts for the corporation. The president of a corporation is the

head and general agent of the corporation and may act for it in matters that are within the corporation's ordinary course of business or incidental to it.

*Foote & Davies, Inc. v. Arnold Craven, Inc.*, 72 N.C. App. 591, 596, 324 S.E.2d 889, 893 (1985).

PupGear does not dispute that Mr. Palmer was president of the corporation at all material times or that ordering component goods necessary for the production of PupGear's products was within or incidental to PupGear's ordinary course of business. Instead, PupGear suggests that Mr. Palmer was president of PupGear in title only and that he possessed narrowly circumscribed powers atypical of the president of a closely held corporation. If this was true, however, it was never communicated to Microfine. Ms. Marler, Ms. Malm, and Mr. Palmer consistently represented to Microfine that Mr. Palmer was PupGear's president without noting any special limitations. This was true even though Ms. Marler, by her own admission, knew at the time she signed the two August 2011 letters to Microfine that Mr. Palmer had been placing purchase orders to Microfine on PupGear's behalf. (Doc. 23-1 at ¶ 23.)

The undisputed evidence shows as a matter of law that Mr. Palmer had the apparent authority to execute the eight purchase orders at issue and that those purchase orders, once accepted and relied upon by Microfine, constitute valid, binding contracts between the parties.

## II. Breach of Contract

The undisputed evidence shows that PupGear has not paid Microfine for any of the eight purchase order contracts at issue, and that it repudiated those contracts on October 11, 2011. The Court therefore concludes as a matter of law that PupGear breached each of those eight contracts.

## III. Damages

The undisputed evidence, including the affidavits of Mr. Martin and Mr. Palmer, shows that the contract price for each of PupGear's August-September 2011 purchase orders was the

cost of the goods at issue plus 22 percent ("COGS+22%"). (*See* Doc 13-1 at ¶¶ 24-69 & p. 34; Doc. 13-2 at ¶¶ 6-14 & pp. 17, 19, 27, 29, 31, 35, 38.) The costs Microfine incurred in filling each of the eight purchase orders are catalogued in the affidavits of Mr. Martin and Mr. Palmer. PupGear does not dispute any of the relevant figures contained in those affidavits, does not question Microfine's explanations as to why it was unable to resell some of the goods PupGear ordered, and does not challenge the summary of costs and calculation of "COGS+22%" provided in Microfine's brief in support of its motion for summary judgment. (*See* Doc. 15 at 18-19.) The Court therefore concludes as a matter of law that Microfine is entitled to damages in the amount of $102,425.74.

It is **ORDERED** that Plaintiff Microfine's Motion for Partial Summary Judgment (Doc. 13) on its breach of contract claim against Defendant PupGear is **GRANTED**. It is further **ORDERED** that Plaintiff Microfine's Motion to Amend the Complaint to Voluntarily Dismiss Tort Claims and Individual Defendants (Doc. 27) is **GRANTED**, all remaining claims against Defendant PupGear are **DISMISSED**, and Defendants Theresa Marler and Michele Malm are **DISMISSED**.

This the 22nd day of January, 2013.

_____
UNITED STATES DISTRICT JUDGE